## Wytheville.

VIRGINIA IRON, COAL AND COKE COMPANY v. CASH'S ADMINIS-
TRATOR.

June 21, 1906.

Absent, Keith, P.

1. VERDICTS—*Conflicting Evidence—Appeal and Error.*—Where the neg-
ligence, if any, of the master in furnishing the servant with de-
fective machinery, and the contributory negligence of the servant
in not discovering and reporting the fact, have been submitted to
a jury under instructions which clearly and correctly state the law,
and there is evidence tending to support either view of the case,
the verdict of the jury is conclusive. This court cannot set aside
a verdict unless it is without evidence to support it, or is plainly
and palpably contrary to the evidence.

Error to a judgment of the Circuit Court of Pulaski county,
in an action of trespass on the case. Judgment for the plaintiff
for $6.000.00. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*D. L. Groner* and *Bullitt & Kelly,* for the plaintiff in error.

*J. C. Wysor* and *T. L. Massie,* for the defendant in error.

. HARRISON, J., delivered the opinion of the court.

This action was brought against the defendant company to
recover damages for its alleged negligence in causing the death

of the plaintiff's intestate. There was a verdict and judgment in favor of the plaintiff. The case was thereupon brought to this court for review.

The first error assigned in the petition is to the action of the court in admitting and rejecting certain evidence. These objections are without merit and were properly not pressed in argument before this court.

The assignment of error particularly relied on in the petition and the oral argument here is the action of the court in refusing to set aside the verdict as contrary to the law and the evidence.

The plaintiff in error is a corporation engaged in the manufacture of pig iron at Pulaski, Va. The deceased was employed by the defendant company as a locomotive engineer, and was engaged at the time of his death in operating one of its engines, hauling a ladle loaded with molten cinder from its furnace to the cinder dump close by. When full, the ladle was drawn by the engine over a track, a distance of about 1,000 feet, to the switch, after passing which point the engine would stop and be backed up-grade, a distance of some 250 feet, to the point where the ladle was emptied. From the point where the engine stopped to back the ladle up the cinder dump, the track extends a distance of 139 feet further, when it runs into a bluff, which forms a natural bumper at that point. On the day of the accident the deceased reported for work about half-past four o'clock in the afternoon. Engine 112, which had come from the repair shops of the company that afternoon, was turned over to him for use in hauling the molten cinder. He made one trip in safety with a ladle of cinder. When he made the second trip, which was after dark, his engine was seen passing the switch somewhat faster than usual, until it ran against the natural bumper at the end of the track with such force that

the front of the engine was broken, the ladle pole twisted and bent and the molten cinder thrown over the cab and the engineer, resulting in his death from burns the next morning. It was seen at a distance that something had happened, and friends ran rapidly to the engineer's assistance. When in the presence of death and with full knowledge of his impending dissolution, he was asked: "How did this happen?" To which question he replied: "My reverse lever would not work." Upon the trial, no objection was made to the introduction of this evidence. An examination of the engine after the accident showed that the unfortunate man had shut off the steam, and had, it is fairly presumed, attempted to reverse the engine, for the reverse bar had been moved back one notch.

If the declaration of this dying man is to be believed, and it is not contradicted, unquestionably the accident resulted from his inability to work the reverse lever and thereby stop the engine. This testimony of the deceased is the only direct evidence as to the cause of the accident. The theory of the plaintiff is that the throttle-valve was defective, thereby causing steam to leak into the steam-chest, creating a pressure upon the sliding valve with which the reverse bar was connected and thus interfering with the action of the reverse bar, preventing the deceased from being able to work it at the crucial moment when so much depended upon his doing so.

The contention of the defendant is that the throttle-valve was not defective, and that, if it was, the deceased, in the exercise of ordinary care, would have known it, and should have reported the defect to the company.

We will not here review the three hundred pages of evidence that have been adduced in support of these respective contentions. We have given it careful consideration, and it must suffice to say that, upon principles too well settled and understood

to call for citation of authority, we have no power to interfere with the conclusion that has been reached by the jury. The evidence for the plaintiff, if accepted by the jury, tended to show that the throttle-valve was out of order, and that this defect would cause the steam to escape into the steam-chest, thereby producing a pressure upon the sliding valve which would prevent the operation of the reverse bar. The evidence further tends to show that this condition of things in the steam-chest was a hidden trouble that was not usual or of necessity to be anticipated by the deceased in the exercise of ordinary care. The negligence, if any, of the defendant company in furnishing the deceased with defective machinery, and the contributory negligence, if any, of the deceased in not discovering and reporting such defect, were both questions of fact for the jury. The case was submitted to the jury upon the evidence and a full exposition of the law applicable thereto, prepared by the learned judge who presided at the trial, so clear and accurate that it was accepted without objection by either party.

A motion was made to set aside the verdict as contrary to the law and the evidence, which was promptly overruled. To justify us in disturbing this verdict we would have to say that it was without evidence to support it, or that it was plainly and palpably against the evidence. This we cannot say, and, therefore, the judgment complained of must be affirmed.

*Affirmed.*